**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DTR ADVERTISING, INC.,

                              Plaintiff,

— against —

BLUE WATER MEDIA, LLC, ANDREW
LATIMER, and GINA POMPONI,

                              Defendants.

Case No.  18-cv-12090

**DTR ADVERTISING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION**
**AND TEMPORARY RESTRAINING ORDER**

Plaintiff DTR Advertising, Inc. ("Plaintiff" or "DTR"), by and through its attorneys,

McGrail & Bensinger, LLP, hereby respectfully submits this Memorandum of Law in Support of

its Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order against

Defendants Blue Water Media, LLC ("Blue Water"), Anthony Latimer ("Latimer"), and Gina

Pomponi ("Pomponi"), (collectively, "Defendants").

**INTRODUCTION**

This is a case about a greedy and disgruntled business, Blue Water, that has resorted to an

aggressive defamatory campaign against Plaintiff in retaliation for not having been awarded the

contract for the purchase of Plaintiff's assets despite its submission of objectively inferior bids as

part of a multiple bid process.  Blue Water has specifically been making and publishing false

statements about Plaintiff's business and financial condition including that it is going out of

business on January 1, 2019, that its employees and clients are leaving, and that vendors will not

be paid.  None of this is true. In fact, despite its status as a distressed company, Plaintiff has

acted diligently and swiftly to sell its assets in two transactions that are scheduled to close on January 4, 2019 and January 10, 2019, pursuant to which most of Plaintiff's employees will be transferred to the new companies and the assets sold, thereby maximizing the value to creditors. As a failed bidder for Plaintiff's assets, Blue Water is aware of Plaintiff's comprehensive efforts in this regard, which renders their false statements that much more egregious.

Blue Water's knowing and intentional efforts to disseminate false and defamatory information to Plaintiff's clients, employees, and vendors is an imminent threat to Plaintiff's ability to finalize a successful sale of its assets and transfer of its employees to the two companies that have agreed to purchase it. The sale of Plaintiff's assets must take place by January 4, 2019 and January 10, 2019, respectively, or else the company will be forced to terminate 90 of its employees across 5 states. In order to put a stop to the defamation and protect Plaintiff's employees, assets, and creditors, it is imperative that Defendants be stopped immediately from making the false and defamatory statements they have been making about Plaintiff. Plaintiff therefore respectfully requests an order of the Court directing Defendants to immediately cease and desist making false and defamatory statement about Plaintiff and its financial condition.

## STATEMENT OF FACTS

Plaintiff respectfully incorporates, as if fully written herein, all of the facts and allegations contained in the Complaint and supporting Affidavits and Declarations submitted herewith.

## ARGUMENT

The Court should grant enter a temporary restraining order and preliminary injunction against Defendants because their continued campaign of false and defamatory statements about

Plaintiff's business and financial condition are an immediate threat to the consummation of two asset purchase sales and the jobs of 90 employees across five states.  To obtain a preliminary injunction and a temporary restraining order, the movant must show: "(1) a likelihood of success on the merits or ... sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc., v. Benihana of Tokyo, LLC*, 784 F. 3d 887, 895 (2d Cir. 2010) (citing *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir.2010)) (internal citations omitted); *See e.g., Echo Design Grp. v. Zino Davidoff S.A*., 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003) (The standard for obtaining a temporary restraining order is the same).  All of these required showings are satisfied in this case.

## I.  PLAINTIFF HAS A LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS DEFAMATION *PER SE* CLAIM

Plaintiff has a likelihood of success on the merits of its defamation *per se* claim under New York law, which requires a showing "that the defendant made a statement that was: (1) false, defamatory, and of and concerning the plaintiff; (2) published to a third party; (3) made with the applicable level of fault; and (4) defamatory *per se*."  *Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 280-281 (2d Cir. 2016) (citing *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011).  All of the elements of the claim can and will be conclusively established at trial and the evidence submitted herewith demonstrates as much.

### A.  Defendant Made False And Defamatory Statements About Plaintiff

From December 4, 2018 through the present, Defendants have engaged in an aggressive and vindictive campaign to destroy Plaintiff's assets and frustrate the sales of Plaintiff's business

to its two prospective buyers by making false and defamatory statements to Plaintiff's clients,

employees, consultants, vendors, and anyone else who would listen.  Some of the statements are

detailed below:

(1) On or around December 4, 2018, Defendant Latimer knowingly and intentionally published the following statement to Jeff Sockol, Plaintiff's financial consultant, at an in person meeting in Plaintiff's New York office:  that Plaintiff is "out of time," that media vendors were about to shut off media outlets for Plaintiff's customers, that clients were seeking alternative vendors, that important employees were about to "jump ship," that Blue Water was "throwing us a life line," that there would be "nothing left to sell" if Plaintiff did not immediately accept his offer, and that Plaintiff's clients and employees would move forward with Blue Water if Plaintiff did not accept its proposal for the purchase of assets.  (*See Sockol Aff. ¶¶* 3-5.)

(2) Between December 6, 2018 and December 16, 2018, Defendant Latimer knowingly and intentionally re-published the statements he made on December 4, 2018 to Jeff Sockol, Plaintiff's financial consultant, via telephone. (*See Sockol Aff. ¶* 7.)

(3) On or around December 17, 2018, Defendant Latimer knowingly and intentionally published the following statement to Priya Ghai, a consultant to Plaintiff's client Phillips Home Health:  that Plaintiff is in debt in the amount of $25,000,000.00 and cannot make payments and that he was "flying out to LA to help her save clients because they are going to be screwed. (*See Furness Aff. ¶* 3.)

(4) On December 17, 2018, Gina Pomponi knowingly and intentionally published the following statement to Plaintiff's employee, Kay Leister, via telephone:  that she was worried about the staff because of "the news" and that Plaintiff could not pay its bills and would be "shutting its doors." (*See Furness Aff. ¶* 4.)

(5) On December 17, 2018, Gina Pomponi knowingly and intentionally published the following statement to Barry Jacobs, consultant to Plaintiff's client, One Partners, via telephone:  that Plaintiff is not paying stations, it owes over $37,000,000.00 in debt and is shutting its doors on January 1, 2019. (*See Furness Aff. ¶* 5*; Vendice Aff. ¶* 3.)

(6) On or around December 17, 2018, Defendants, through their employee David Tiberia, knowingly and intentionally published the following statement to Plaintiff's client, Mobile Help via telephone:  "This is awkward, but you will have to hear it from someone. Mercury is unable to pay their bills and is closing their doors," "we tried to offer them a lifeline," but they are too far gone, and "none of the execs there know this is happening" so if they tell you it is not happening, they do not know either. (*See Furness Aff. ¶* 7.)

(7) On or around December 17, 2018, Defendants knowingly and intentionally published the following statement to Plaintiff's client, Net Trade LLC via email:  Plaintiff is financially

instable and there is cause for concern about the sharing of confidential client information. (*Vendice Aff. ¶ 5.*)

None of these statements are true. (*See Sockol Aff. ¶¶ 9-10.*) Plaintiff is a distressed company that is taking steps to transition its business in an orderly fashion to two asset purchasers that have tentatively agreed to purchase the company's assets on the East and West Coast, respectively. Those sales have hard deadlines of January 4, 2019 and January 10, 2019, respectively and if successful, most of Plaintiff's employees will be transitioning to one of the two companies. While there are outstanding debts and obligations, Plaintiff has gone to great lengths to ensure an orderly transition of its business for the benefit of its employees, clients, and creditors. For all of the stated reasons, Plaintiff is likely to succeed on the falsity element of its defamation *per se* claim.

### B. Defendant Published The False And Defamatory Statements To Third Parties

As described in detail in Section I.A. above, Defendant made the false and defamatory statements to third parties including Plaintiff's consultant, employees, clients, and vendors. Plaintiff is therefore likely to succeed on the publication element of its defamation *per se* claim.

### C. Defendant Made The False And Defamatory Statements Knowingly and Intentionally

Defendants unsuccessfully participated in a fulsome bid process in order to acquire the assets of Plaintiff, pursuant to which they learned a lot of information about Plaintiff's business including its financial condition and its future plans and efforts to deal with its financial distress. Defendants nevertheless set out to destroy Plaintiff and its assets at the expense of 90 of its employees in complete disregard of the truth. Defendants repeatedly made his intentions clear in meetings and phone calls with Plaintiff and Plaintiff's consultant stating: Blue Water was "throwing us a life line," that there would be "nothing left to sell" if Plaintiff did not immediately

accept his offer, and that Plaintiff's clients and employees would move forward with Blue Water if Plaintiff did not accept its proposal for the purchase of assets. (*See Sockol Aff.* ¶¶ 6-7.) Importantly, although the evidence is clear that Defendants acted with knowledge and intent in this case, Plaintiff is a private figure and therefore need only show "negligence," which is unquestionably established if not exceeded by Defendant's actions. *See Enigma*, 194 F. Supp. 3d at *287. Plaintiff is therefore likely to succeed on the fault element of its defamation *per se* claim.

### D. The False Statements Were Defamatory *Per Se*

Under New York law, a statement is defamatory *per se* where it tends to injure another in its "trade, business, or profession." *Enigma*, 194 F. Supp. 3d at *290 (citing *Zherka v.* Amicone, 634 F.3d 642, 645 n. 6 (2d Cir. 2011). All of the false statements that form the basis of Plaintiff's claim and motion relate directly to Plaintiff's business and its credit-worthiness, which are the quintessential example of a statement that is defamatory *per se*. Plaintiff is therefore likely to succeed on the harm element of its defamation *per se* claim.

## II. PLAINTIFF IS LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF AN INJUNCTION

Plaintiff is not just likely to suffer irreparable harm in the absence of an injunction, which is all it is required to show, it is a near certainty that it will be destroyed along with its assets and the livelihood and careers of 90 of its employees. After a thorough and transparent bid process with multiple bidders, including Defendant Blue Water, Plaintiff entered into letters of intent with two potential purchasers of its assets, one for the East Coast and one for the West Coast. Plaintiff has been tirelessly working closely with those purchasers in order to get across the finish line on those deals by the firm deadlines of January 4, 2019 and January 10, 2019, respectively. If the false and defamatory statements have the intended and likely effect of

eroding Plaintiff's assets and its employee base, it will dramatically alter the assets that are available for purchase in accordance with the letters of intent and will destroy the only viable option for Plaintiff to be able to avoid complete destruction and termination of its employees in early January. As such, Defendants' unlawful conduct must be stopped immediately in order to prevent the dire consequences that would otherwise befall Plaintiff, its assets, employees, clients, and creditors.

### III. THE BALANCE OF THE HARSHIPS TIPS IN PLAINTIFF'S FAVOR

There is no hardship exacted on Defendants by the entry of an order requiring them to stop making false and defamatory statements about Plaintiff and its financial condition while the hardship exacted on Plaintiff if they continue to do so is absolute. There is no question that a failure to stop Defendants defamation of Plaintiff will destroy Plaintiff's ability to sell its assets, transfer its employees, and provide the best possible value to its creditors. As such, there can be no argument that the balance of the hardships in this case tips overwhelmingly in Plaintiff's favor.

### IV. AN INJUNCTION IS IN THE PUBLIC'S BEST INTEREST

An injunction ordering Defendants to stop making false and defamatory statements about Plaintiff and its financial condition would serve the interests of the public by protecting the distressed company, its employees, assets, and creditors from the devastating impact that will necessarily result from Defendants' continued unlawful action. Conversely, there is no public interest in allowing false and defamatory statements to be made and destroying businesses and individual lives and careers on account Defendants' inability to accept that it was not the winner of a fair and transparent bid process.

7

## CONCLUSION

For all of the foregoing reasons, Plaintiff DTR respectfully requests a temporary restraining order immediately enjoining Defendants from making false and defamatory statements about Plaintiff and its financial condition during the pendency of a preliminary injunction hearing for the same relief.

DATED:     December 20, 2018
           New York, New York

Respectfully Submitted,

MCGRAIL & BENSINGER LLP

Gabrielle Y. Vazquez
888-C 8th Ave #107
New York, New York 10019
Telephone:  (917) 509-7818
GVazquez@McGrailBensinger.com
*Counsel for Plaintiff*

8